**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1587
_____

JOSPHA CAMPOS,
a/k/a Jospha Camposs; a/k/a Jospha A. Campos,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A076-134-412)
Immigration Judge: Hon. John B. Carle
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 13, 2018
_____

Before: GREENAWAY, JR., SHWARTZ, and BIBAS, <u>Circuit Judges</u>.

(Filed: November 15, 2018)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Jospha[1] Campos was ordered removed in absentia, and sixteen years later she filed a motion to reopen her removal proceeding. The Immigration Judge ("IJ") denied her motion, and the Board of Immigration Appeals ("BIA") dismissed her appeal and denied her motion to reconsider that ruling. Campos now petitions for review of the order denying reconsideration. For the reasons that follow, we will deny the petition.

I

Campos, a native and citizen of the Dominican Republic, entered the United States near San Juan, Puerto Rico in 1992. In 1995, Campos married a United States citizen who subsequently filed an I-130 Petition on her behalf. The former Immigration and Naturalization Service ("INS")[2] requested more evidence in support of the Petition, which Campos did not provide. In 1998, the INS denied the Petition as abandoned. Campos claims that she "found out [only] recently" that the Petition was denied. A.R. 137 ¶ 4.

In April 2000, at the recommendation of her acquaintance, Isabel Martinez, Campos visited the INS's Philadelphia District Office to ask about immigration benefits. Campos claims that she provided her name and address but the immigration officer misspelled her name and listed Martinez's address instead. The INS determined that Campos was removable, and issued a Notice to Appear ("NTA") charging Campos with

---

[1] The docket reflects the spelling of Petitioner's name as "Jospha" but her brief reflects the spelling as "Josefa." Pet'r's Br. at 5.

[2] In 2003, the functions of the INS were transferred to the Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107–296, § 402, 116 Stat. 2135 (codified at 6 U.S.C. § 202).

removability as an alien who is a stowaway, in violation of 8 U.S.C § 1182(a)(6)(D), and ordering her to appear at a hearing in August 2000. The NTA, though it lists Martinez's address, indicates that an INS agent personally served Campos in June 2000 and orally read in Spanish the date of the August 2000 hearing and the consequences of not appearing. Campos, however, claims "the NTA was never given to [her] personally." A.R. 137 ¶ 7. Campos failed to appear at the August hearing, and it was rescheduled for October 2000. Campos appeared before the IJ on the day of her October hearing with Martinez, who was "seemingly acting as [her] attorney." A.R. 44-45. Through a Spanish interpreter, the IJ: (1) directed Campos to fill out a change of address form and to return later that day; and (2) told her that if she did not return, she would be ordered removed. According to Campos, Martinez "misinformed" her that she would be deported if she returned as ordered, so she did not do so. A.R. 35. The IJ thus ordered Campos's removal in absentia. Campos subsequently divorced her first husband and remarried.

Campos learned of the removal order against her when her second husband filed an I-130 Petition on her behalf in 2015. In 2016, sixteen years after the IJ had issued the removal order, Campos filed a motion to reopen her removal proceedings and to stay her removal, claiming that she never received notice because the NTA was sent to Martinez's address, not hers, and that, if she had been properly notified, she would have attended the hearing. The IJ denied the motion to reopen, concluding that the record demonstrated that Campos: (1) was personally served with the NTA and informed of its contents in her native language; (2) appeared at the October 2000 hearing; (3) was directed to return later that day with a completed address form; and (4) was warned that failure to return would

3

result in her removal. Because Campos had notice of the hearing and was informed of the consequences of her failure to appear, the IJ denied her motion to reopen.

Campos appealed the IJ's denial to the BIA, arguing that the presumption of effective delivery failed because: (1) Campos did not receive the NTA, which was sent to Martinez, not to Campos, even though Campos gave her address to the Philadelphia Office and the IJ at her October 2000 hearing; (2) Martinez never gave the NTA to Campos; and (3) Campos was under the mistaken belief that in October 2000 Martinez took her to an INS office "similar to the one she . . . went to" in April 2000 to get her green card based on her initial I-130 Petition and "was not aware that she appeared in court" on that day. A.R. 35-37. In response to the Government's motion for summary affirmance, Campos asserted that errors in the NTA's certificate of service—including the wrong address and incorrect representations regarding service—reveal its unreliability and support her claim that she never received notice.

The BIA dismissed the appeal, agreeing with the IJ's description of the October 2000 hearing—which Campos did not contest—and his conclusions that Campos (1) had received actual notice of the hearing at which she appeared and (2) failed to demonstrate either lack of notice or exceptional circumstances beyond her control that warrant rescission of the in absentia removal order.

Campos sought reconsideration, again arguing that she was not properly notified of the hearing, did not understand the purpose of the October 2000 hearing, and was not advised of the consequences of not returning. The BIA denied the reconsideration motion, noting that it was not persuaded that Campos would have appeared for her

4

hearing even if all of the deficiencies she noted did not exist. The BIA reached this conclusion because Campos had in fact appeared on the date of her hearing, left, and "admitted that she [did not] return out of fear that she might be deported." A.R. 4. Campos petitions for review.

## II[3]

An alien cannot be ordered removed from the United States without notice and an opportunity to be heard. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). If the Government intends to initiate removal proceedings against an alien, it must provide the alien with a written NTA specifying, among other things, "[t]he time and place at which the proceedings will be held," 8 U.S.C. § 1229(a)(1)(G)(i), and "the consequences . . . of the failure . . . to appear at such proceedings," id. at § 1229(a)(1)(F)(iii). Notice is not required if the alien fails to provide or update her address. Id. §§ 1229(a)(2)(B), 1229a(b)(5)(B). "Any alien who, after written notice . . . has been provided[,]. . . does

---

[3] We have jurisdiction to review the BIA's order denying Campos's motion to reconsider, 8 U.S.C. § 1252(a)(1), and apply an "abuse of discretion [standard], regardless of the underlying basis of [her] request for relief." Pllumi v. Att'y Gen. of U.S., 642 F.3d 155, 158 (3d Cir. 2011) (citing INS v. Doherty, 502 U.S. 314, 323–24 (1992)). Our review of the BIA's decision is deferential, and we will "not disturb it unless it is arbitrary, irrational, or contrary to law." Id. (quotation marks and citation omitted). "[A] petitioner who only seeks review of a BIA order on reconsideration foregoes any more favorable standard of review that might have applied had the petitioner sought review of the BIA's underlying decision on the merits." Castro v. Att'y Gen. of U.S., 671 F.3d 356, 364-65 (3d Cir. 2012). In such situations, we review the merits only insofar as necessary to determine whether the BIA abused its discretion when it denied the reconsideration motion. Id.

5

not attend a proceeding . . . shall be ordered removed in absentia if the [Government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable." 8 U.S.C. § 1229a(b)(5)(A); 8 C.F.R. § 1003.26.

An in absentia removal order may be rescinded upon a motion to reopen "filed at any time if the alien demonstrates that the alien did not receive notice." 8 U.S.C. § 1229a(b)(5)(C)(ii). An alien whose motion to reopen is denied may seek reconsideration, but she must "specify[] the errors of law or fact in the prior [BIA] decision," and cite to "pertinent authority." 8 C.F.R. § 1003.2(b)(1). The purpose of a motion to reconsider is to "request that the [BIA] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." Castro, 671 F.3d at 364 (quoting In re Ramos, 23 I. & N. Dec. 336, 338 (BIA 2002)). "[A] motion to reconsider is not a process by which a party may submit, in essence, the same brief presented on appeal and seek reconsideration by generally alleging error in the prior [BIA] decision." In re O-S-G-, 24 I. & N. Dec. 56, 58 (BIA 2006).

We will not disturb the BIA's denial of Campos's motion for reconsideration because her motion pressed the same arguments she had made to the BIA on appeal. Campos repeated her argument that the NTA had an incorrect address but did not identify any error in the conclusion that she had actual notice of the date and location of the hearing as demonstrated by the fact that she appeared before the IJ on the scheduled date for the October 2000 hearing. Moreover, while Campos argued that Martinez advised her

6

not to return as directed, she did not explain how the BIA erred in concluding that she knew of the hearing date, was told to return later the same day with a completed address form, was warned in person that she would be ordered removed if she failed to return, and admitted to having no intention to return. In short, her reconsideration motion reiterated what she argued in her appeal, namely that the NTA failed to provide her notice of the hearing and she received advice not to return for the hearing, both of which the BIA found insufficient to rescind the in absentia removal order.[4] Because Campos's reconsideration motion "repeat[ed] arguments that the BIA has previously rejected," the BIA did not abuse its discretion in denying the motion. Liu v. Gonzales, 439 F.3d 109, 111 (2d Cir. 2006) (per curiam); see In re O-S-G-, 24 I. & N. Dec. at 58.

### III

For the foregoing reasons, we will deny Campos's petition for review of the BIA's order denying her motion for reconsideration.

---

[4] To the extent Campos argues that the BIA erred because the "IJ committed error by insisting that [she] return with a complete address with a zip code," and "[t]he NTA did not have a Spanish language version," Pet'r's Br. at 10, we lack jurisdiction to review these arguments because she did not present them to the BIA. See Castro, 671 F.3d at 365 (observing we may review only the particular issues the petitioner has exhausted (quoting 8 U.S.C. § 1252(d)(1)).